IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SUSA NASA,

   Plaintiff,

    v.

MEDICAL DIRECTOR OF THE
ATLANTA PRETRIAL DETENTION
CENTER, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:05-CV-1205-TWT

<u>ORDER</u>

This is a *pro se* civil rights action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 2], which, pursuant to Court Order [Doc. 3], will be treated as a Motion for Summary Judgment. For the reasons set forth below, the Defendants' motion is GRANTED.

I. <u>BACKGROUND</u>

On August 29, 2004, the Plaintiff, Susa Nasa, was arrested for indecency by a Metro Atlanta Rapid Transit Authority ("MARTA") police officer. He was locked up at the Atlanta City Detention Center ("ACDC"). That evening, an intake nurse interviewed him and asked him several questions about his health. The Plaintiff answered affirmatively to the following prompts: (1) conscious; (2) heart disease; (3)

positive tuberculosis; and (4) allergic. At that time, the Plaintiff also stated that cold cuts caused him to suffer from esophageal reflux.

The Plaintiff was incarcerated at ACDC until September 13, 2004. During the course of his sixteen-day incarceration, he complained of esophageal pain, back pain, difficulty walking up steps, high blood pressure, and dizziness. He was treated for these ailments with a variety of medications. He claims that he also complained repeatedly about his allergic reaction to cold cuts. This request for a cold cut free diet was honored by the ACDC beginning on September 10, 2004.

On March 2, 2005, the Plaintiff filed this 1983 action against the Atlanta City Government and against the Food Services Director and the Medical Director of the ACDC alleging inadequate medical care in violation of his constitutional rights. The Defendants filed a Motion to Dismiss, which this Court has converted into a Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-

59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

### III. <u>DISCUSSION</u>

#### A. <u>Liability of Individual Defendants</u>

The Plaintiff names as individual Defendants in this action both the Food Services Director and the Medical Director of the ACDC.  A government officer is entitled to qualified immunity in performing his discretionary actions unless all reasonable, similarly situated public officials would be compelled to conclude that the officer's actions violated preexisting law.  <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1030-31 (11th Cir. 2001).  To prove a constitutional rights violation, a prisoner must show that a jail official acted in a manner that evidenced deliberate indifference to the prisoner's objectively serious medical needs.  <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (<u>citing</u> <u>Estelle v. Gamble,</u> 429 U.S. 97 (1976)).  Deliberate indifference requires a showing of: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 n.21 (11th Cir. 2004).  The

Eleventh Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (punctuation omitted).

In Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), for example, members of a prison staff were sued for failing to provide a chronic alcoholic with adequate medical care. In denying the defendants' motion for summary judgment, the Eleventh Circuit cited to the defendants' extensive knowledge of the plaintiff's serious need for care. Included among this evidence were warnings from the plaintiff's wife and father that: (1) without alcohol or medicine, the plaintiff was subject to seizures that would make him jerk, turn blue and require oxygen; (2) he had recently been hospitalized with these seizures, the last of which had almost killed him; and (3) within eight to ten hours of his arrest, he was expected to have such a seizure. Id. at 1426-27.

Here, the Plaintiff appears to allege two 1983 claims for inadequate medical treatment in violation of his rights under the Eighth Amendment of the United States Constitution and Article I, Section I, Paragraph XVII of the Georgia State Constitution. The Plaintiff claims that the Defendants violated his rights by (1) delaying the implementation of his "no cold cut" dietary request and (2) placing him

in a cell on an upper floor of the ACDC when they knew he had back pain and high blood pressure.  As an initial matter, the Court must properly analyze a claim for denial of inadequate medical care by a pretrial detainee under the due process clause of the Fourteenth Amendment.  Hamm, 774 F.2d at 1574-75 (citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983)).  To show a constitutional violation by delay in treatment, an inmate must place in the record "verifying medical evidence" establishing the detrimental effect of that delay.  Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002). The evidence shows that the Plaintiff informed an ACDC nurse during his intake that he had heart disease and that cold cuts caused him to suffer from esophageal reflux.  Over the course of his sixteen-day incarceration, he continued to complain of esophageal and back pain, as well as difficulty walking upstairs, high blood pressure, and dizziness. He also submits affidavits from other prisoners who testify that he was having problems swallowing.  (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. A, B.)  Finally, he claimed that he suffers from esophagus cancer and is allergic to cold cuts.  Despite this assertion, however, he has offered no verifying medical evidence that he has ever even been diagnosed with these ailments.  Viewed in light of the Eleventh Circuit's clear precedent, the Court finds that the

Plaintiff's complaints about his diet requirements and other ailments did not demonstrate a serious or life threatening medical condition.

Furthermore, even if I assume that the Plaintiff proved his cold cut allergy to be a serious medical condition, he still failed to show that the Defendants disregarded that risk by conduct that was more than negligent. Federal Courts are reluctant "to second guess medical judgments and to constitutionalize claims" where the prisoner has received medical attention and the dispute concerns only the adequacy of that treatment. Hamm, 774 F.2d at 1575 (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). The Plaintiff asked for and in fact received his dietary accommodation, and he has not demonstrated that prison officials or healthcare personnel intentionally delayed in fulfilling those demands. This Court finds that the ten-day delay in heeding his request for a cold cut free diet did not create serious harm, and at most, constituted negligence on the part of the Defendants. Indeed, the record shows that the request was honored even though this limitation was not one of ACDC's special diets. (Defs.' Mot. for Summ. J., at 10.) Thus, the Plaintiff's constitutional claim for delay in meeting his dietary request fails as a matter of law.

This Court next finds that the Plaintiff has not presented sufficient evidence to show that by placing him in a cell on the third floor, the staff at ACDC exposed him to serious risk of harm. See Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978)

(holding that an inmate's high blood pressure presented no "true danger" or "serious threat" to his health).  Both the Supreme Court and the Eleventh Circuit have made clear that "[a]fter incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003) (quoting Estelle, 429 U.S. 97, 104 (1976)).  The Plaintiff has failed to show that his accommodations were anything more than a logistical necessity of confinement in a crowded city jail.  This Court holds that the Plaintiff has not shown any genuine issues of fact in his claims against the individual Defendants, thus warranting their motion for summary judgment.

      B. Liability of the City of Atlanta

The Plaintiff has also sued the City of Atlanta for these same constitutional violations.  A local government may not be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory.  Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978); Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1270-1271 (11th Cir. 2005).  Instead, a city will be liable only if the plaintiff can establish that an official custom or policy of the city was the "moving force" behind the deprivation of a constitutional right.  City of Canton v. Harris, 489 U.S. 378, 385 (1989); McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004).  Consequently, to succeed on a section 1983 claim against a city, a plaintiff must demonstrate that a constitutional deprivation

occurred: (1) pursuant to an officially promulgated policy; (2) as the result of a decision made by an official with final policymaking authority for the city; or (3) as a result of actions taken pursuant to "custom or usage" with the force of law. Monell, 436 U.S. at 690-91.

The Plaintiff attempts to establish the City's liability by way of the actions of the Medical Director and Food Services Director of the ACDC.  The policy regarding handling of food for inmates, however, is set by the Chief of Corrections and the ACDC staff, not the City of Atlanta. (Defs.' Mot. for Summ. J., at 6.)  Moreover, neither of the named individual Defendants held a position of final policymaking authority with the City of Atlanta.  Thus, the Plaintiff has failed to identify any City policy that resulted in a delay in providing him with his dietary requests.

The Plaintiff also claims that the City holds an unwritten policy that prevented medical officials at the ACDC from transferring him to Grady Hospital even though they agreed that he needed to be hospitalized. (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 3.)  In support of this allegation, he offers the affidavits of two fellow prisoners who state that they heard a nurse tell him that he could not go to the hospital because of the City's policy. (Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. A, B.)  To constitute a "custom or usage" with the force of law, a plaintiff must show a widespread city practice that has become permanent and well settled. Griffin v. City

of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001). While formal approval is not required, isolated or random acts normally do not suffice to establish a city custom or policy. Depew v. City of St. Marys, Georgia, 787 F.2d 1496, 1499 (11th Cir. 1986). "Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." Id.; see also Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994) (holding that a plaintiff could not demonstrate a custom or policy based solely on the actions or words of one city official without final policymaking authority). Here, the Plaintiff's allegation that an ACDC nurse told him he was not taken to the hospital because of a City policy does not meet the requisite burden for demonstrating a widespread city practice. Therefore, summary judgment for the City of Atlanta is warranted.

    C. Request for Appointment of Counsel

The Plaintiff also requests, although not through a separate motion, that the Court appoint counsel in this case. However, Eleventh Circuit case law on the appointment of counsel is quite clear. "Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985) (citations omitted); see also Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999); Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel is not

required if "[t]he essential facts and legal doctrines [are] ascertainable without the assistance of court-appointed counsel." Wahl, 773 F.2d at 1174. The Court finds that the Plaintiff has failed to demonstrate exceptional circumstances justifying the appointment of counsel. The Plaintiff's request is thus denied.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 2] is GRANTED. In addition, the Plaintiff's request for appointment of counsel is DENIED.

SO ORDERED, this 9 day of November, 2005.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge